STATE of Wisconsin, Plaintiff-Respondent,

v.

Steven A. SCHANTEK, Defendant-Appellant.†

Court of Appeals

*No. 83–1972–CR. Submitted on briefs April 30, 1984.— Decided June 13, 1984.*
(Also reported in 353 N.W.2d 832.)

† Petition to review denied.

For the defendant-appellant, the cause was submitted on the briefs of *Mary E. Waitrovich,* assistant state public defender.

For the plaintiff-respondent, the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *James H. McDermott,* assistant attorney general.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J.   Following trial to the court, the defendant, Steven Schantek, was adjudged guilty of burglary contrary to sec. 943.10(1)(a), Stats.   The trial court withheld sentence and placed Schantek on probation for a period of three years.   Among the conditions of probation, the trial court imposed ninety days' incarceration in the county jail.

Schantek appeals the trial court's ruling that his entry of his employer's premises was without consent.   Schantek argues that since he was provided a key to the premises and was not given express or written restrictions forbidding his presence on the premises for nonemployment purposes, his entry was with consent.   We disagree and affirm Schantek's conviction.

The only issue at trial was whether Schantek had consent to enter his employer's premises.   The facts on this issue are not in dispute.   Schantek was employed by the Benco Oil Company as a cashier at a self-service gas station in Kenosha.   The normal operating hours of the station were from 6:00 a.m. to 9:00 p.m.   The employee who closed the station would ordinarily require an added fifteen or thirty minutes to complete his duties.   It is undisputed that sometime prior to 11:25 p. m. on October 12, 1982, Schantek went to his place of employment, entered with the key his employer had provided him and took money in a bank bag from the gas station.   Shortly thereafter, Schantek was apprehended by the police and admitted the entry and the theft.

In conjunction with his being hired, Schantek was provided a key to the premises.   It is undisputed that he was not *expressly* told that his presence on the premises "after hours" or for nonemployment purposes was prohibited.   It is also undisputed that the Benco employees were not provided any written restrictions relative to their presence on the property.   Based on these facts,

Schantek argues that the element of nonconsent was not proven beyond a reasonable doubt.

A factual determination made by a trial court will not be disturbed unless clearly erroneous. Sec. 805.17(2), Stats. However, when the principal facts in the case are undisputed and the controversy centers on ultimate conclusions of fact or conclusions of law, an appellate court is not bound by the findings of the trial court. *Chicago, Milwaukee, St. Paul & Pacific Railroad Co. v. City of Milwaukee,* 47 Wis. 2d 88, 96, 176 N.W.2d 580, 583 (1970). Since the facts in the instant case are undisputed and the issue is whether Schantek's possession of the key without express restriction confers consent to enter the premises under any circumstances, the issue before us is a question of law which we review *de novo*.

The element of nonconsent in a burglary action consists of two subelements: (1) entry without consent and (2) knowledge on the part of the defendant that such entry was without consent. Wis J I—Criminal 1421.

The State argues that we need not concern ourselves with the issue of Schantek's knowledge because he has made no attempt to explain away the evidence which establishes nonconsent in the first instance. Support for this argument springs from *Hanson v. State,* 52 Wis. 2d 396, 190 N.W.2d 129 (1971), wherein the supreme court stated:

In this case there was no consent in fact. The defendant's state of mind is irrelevant because he makes no assertion that he assumed he had consent or that he purported to be acting under legal authority. *Unless the defendant makes some attempt to explain away the evidence that there was no consent in fact, the state has no obligation to assert or prove the subjective state of the defendant's mind.* [Emphasis added.]

*Id.* at 402, 190 N.W.2d at 133. In the instant case, Schantek prominently put this entire matter at issue at the opening of the case.[1] The State argues that because Schantek did not take the stand or call any witnesses in his defense, he has not made an evidentiary attempt to explain away the evidence which supports a finding of nonconsent. However, this determination should not be based upon *who* presents the evidence, but rather *what* the evidence is. Oftentimes, a party may make a more effective case through cross-examination than by putting on his own evidence. Schantek signaled at the very start of trial that nonconsent would be the only contested issue, and he conducted his cross-examination from that perspective. Because he presented at least an arguable position on this issue, we conclude that he has made the requisite effort under *Hanson* to explain away the evidence presented in support of nonconsent.

The issue then before us is whether the element of nonconsent was proven. Schantek emphasizes that the element of consent should not be confused with that of the intent to steal. We agree. This does not mean, however, that those facts bearing upon the proof of one may not be considered as to the other.

Schantek argues that since the employer gave no express or written restrictions relative to Schantek's presence on the property, any presence is consensual as a matter of law. He also claims that the employer's delivery of a key to the premises for employment pur-

---

[1] Schantek's counsel, in his opening statement to the court, stated in part as follows:

It is not going to be disputed in this case that Mr. Schantek was the individual who entered the station or that Mr. Schantek had the intent to steal at the time station. [sic] *The issue in this case is going to be whether or not Mr. Schantek had consent to enter the building, . . . .* [Emphasis added.]

poses constitutes consent by the employer to Schantek to be on the premises for any purpose. Schantek similarly argues that his custody of the key creates knowledge that he could be on the property for any purpose at any time. No Wisconsin case has addressed this issue under these facts.[2]

Most employer-employee relationships create the implied right of the employee to be on the premises for certain purposes and not for others. The extent of this permission must be determined under the facts of each case. These facts may reveal that consent was all-encompassing, strictly limited or somewhere in between.[3]

Although the facts in the case of *People v. Hart,* 270 N.E.2d 102 (Ill. App. Ct. 1971), differ in that the defendant-employee did not have a key to the premises, the language of the case relative to the issue of consent is appropriate:

This argument hypothesizes that the relation of employer-employee gives an employee authority to enter his employer's premises at any hour of the day and by any means.

. . . .

It is generally said that unlimited consent given an employee to enter the premises of his employer is a defense to a charge of burglary. . . . However, concerning the right of an employee to enter premises of the employer, consent, either stated or implied, but limited

---

[2] We distinguish such cases as *Champlin v. State,* 84 Wis. 2d 621, 267 N.W.2d 295 (1978), and *Levesque v. State,* 63 Wis. 2d 412, 217 N.W.2d 317 (1974), because they involved nonemployee entries to public places at times when those places were open to the general public.

[3] As Schantek points out, the employee's presence on the employment premises for nonemployment purposes might be within the parameters of consent. Examples of such presence might include the after-hours presence of the employee to retrieve an item of his own personal property or to leave a note for another employee.

as to place, time or purpose, is not a defense where entry occurs outside the limitation. [Citations omitted.]

*Id.* at 104. The task in most cases will be to determine the limits of such consent and the defendant's knowledge or lack of it.

We do not pretend that the limits of Schantek's right to be on the premises can always be easily defined. Nor are we prepared to state that Schantek's presence on the employment premises beyond his hours of employment for some nonemployment purpose would always be nonconsensual. We do conclude, however, that the arrangement between Schantek and his employer clearly rendered certain presence inappropriate and thus beyond the limits of the employer's consent and Schantek's knowledge. A fair reading of the evidence does not allow for the strained conclusion that Benco gave Schantek all-encompassing consent to enter the premises at all times for all purposes—including criminal adventure. Nor does the evidence remotely allow for Schantek's claim of knowledge of such all-encompassing consent. We therefore conclude *under the facts of this case* that the employer did not give Schantek consent to enter the premises, and Schantek had knowledge of such nonconsent.

*By the Court.*—Judgment affirmed.